## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK TUFANO, | : | Civil No. 3:24-CV-1117 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Mehalchick) |
| v. | : | |
| | : | |
| AMOS MILLER, et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.   Factual Background

This *pro se* lawsuit, which was referred to us on August 23, 2024, is a legally infirm case whose jurisdictional underpinnings are highly suspect. Recognizing the fundamentally flawed nature of this lawsuit, the judge previously assigned to the case, Saporito, C.M.J., ordered the plaintiff, Frank Tufano, to address these very basic jurisdictional issues by August 15, 2024.

Tufano has ignored this instruction, and a review of his various complaints discloses that his claims are without merit. Accordingly, for the reasons set forth below, it is recommended that this complaint be dismissed.

This legal saga, which is marked by frivolous claims and transparent attempts at jurisdictional manipulation, began on July 8, 2021, when Frank Tufano filed his initial *pro se* complaint in federal court. (Doc. 1). This complaint alleged that Tufano

1

resided in Pennsylvania and operated as some sort of online meat purveyor. (Id.) Tufano acknowledged that his online beef business had run afoul of the USDA in 2022, and then advanced odd, novel, and conspiratorial claims against another Pennsylvania-based food seller, Amos Miller, along with a host of other news outlets and charitable, GoFundMe sites. (Id.)

According to Tufano, Amos Miller also encountered legal entanglements with the USDA in 2022. Tufano complains that Miller, using various social media news outlets and GoFundMe pages, advertised, promoted, and highlighted his legal difficulties with food safety inspectors in a way which Tufano believes attracted potential customers to Miller's business rather than his own.[1] Characterizing this conduct of as criminal cabal in violation of Pennsylvania's crimes code and charities statutes, Tufano sought wide-ranging injunctive relief and damages. (Id.)

There was an obvious jurisdictional flaw in Tufano's complaint since it invoked the Court's diversity jurisdiction but stated on its face that the plaintiff, Tufano, and the lead defendant, Miller, were both Pennsylvania residents, a fact which defeated the Court's subject matter jurisdiction. The Court put Tufano on notice of this jurisdictional flaw and Tufano filed a spate of pleadings which seemed

_____

[1] We note in passing that it is curious that anyone would attempt to promote an online food business by emphasizing the concerns raised by federal food inspectors regarding that business but need not assess the merits of this odd marketing strategy for purposes of this Report and Recommendation.

intended to manufacture diversity jurisdiction. First, Tufano filed an amended complaint which now, suddenly, changed his residence from Pennsylvania to New York. (Doc. 5). Tufano then abruptly reversed direction and tendered a proposed second amended complaint, (Doc. 9), which conceded that he was a Pennsylvania resident, but deleted Amos Miller, a fellow Pennsylvanian, as a defendant. The difficulty with this latest iteration of Tufano's complaint was that it still included a defendant, Maple Leaf Media, LLC, that Tufano stated was a Pennsylvania resident, thus destroying diversity. (Id., ¶ 35).

Presented with these jurisdictionally suspect pleadings, the Court entered two orders directing Tufano to address these jurisdictional questions on or before August 15, 2024. (Docs. 8, 10). This deadline has passed and, despite this clear and repeated instruction from the Court, Tufano has not complied with the Court's orders, or addressed this profound flaw in his pleadings, and the time for action on his part has now passed. The plaintiff's noncompliance with these orders now stymies any efforts to address these ultimately meritless claims. Accordingly, for the reasons set forth below, it is recommended that this case be dismissed.

## II.   <u>Discussion</u>

### A. <u>Dismissal of this Case Is Warranted Under Rule 41.</u>

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute

or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002) (citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion, "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011) (quoting Briscoe v. Klaus, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case." Briscoe, 538

4

F.3d at 263 (quoting <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1373 (3d Cir. 1992)). Consistent with this view, it is well settled that "'no single <u>Poulis</u> factor is dispositive,' [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.'" <u>Id.</u> (quoting <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir. 2003); <u>Mindek</u>, 964 F.2d at 1373). Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the Court of Appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. <u>See, e.g.</u>, <u>Emerson</u>, 296 F.3d 184; <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506 (3d Cir. 2007); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the failure to respond to the Court's prior order is entirely attributable to the plaintiff, who has failed to abide by court orders or address a basic jurisdictional defect in this case.

Similarly, the second <u>Poulis</u> factor— the prejudice to the adversary caused by the failure to abide by court orders—also calls for dismissal of this action. Indeed, this factor is entitled to great weight and careful consideration. As the Third Circuit has observed:

"Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir. 1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir. 1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe, 538 F.3d at 259-60.

In this case, the plaintiff's failure to litigate this claim, or to comply with court orders, now wholly frustrates and delays the resolution of this action. In such instances, the defendant is plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio, 256 F. App'x 509 (failure to timely serve pleadings compels dismissal); Reshard, 256 F. App'x 506 (failure to comply with discovery compels dismissal); Azubuko, 243 F. App'x 728 (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor—the history of dilatoriness on the plaintiff's part—it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes

a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.'" <u>Briscoe</u>, 538 F.3d at 260-61 (quoting <u>Adams</u>, 29 F.3d at 874) (some citations omitted). Here, the plaintiff has failed to comply with court orders or address the core issue of subject matter jurisdiction, as he was ordered to do. Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." <u>Adams</u>, 29 F.3d at 874.

The fourth <u>Poulis</u> factor—whether the conduct of the party or the attorney was willful or in bad faith—also cuts against the plaintiff in this case. In this setting, we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams</u>, 29 F.3d at 875. At this juncture, when the plaintiff has engaged in transparent efforts to manufacture jurisdiction and has failed to comply with instructions of the Court, we are compelled to conclude that the plaintiff's actions are not isolated, accidental, or inadvertent but instead reflect an ongoing disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with

the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe, 538 F.3d at 262-63; Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis, we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims since the plaintiff is now wholly noncompliant with the Court's instructions. The plaintiff cannot refuse to comply with court orders which are necessary to allow resolution of the merits of his claims, and then assert the untested merits of these claims as grounds for declining to dismiss the case. Furthermore, it is well settled that "'no single Poulis factor is dispositive,' [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.'" Briscoe, 538 F.3d at 263 (quoting Ware, 322 F.3d at 222; Mindek, 964 F.2d at 1373). Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent dismissal of a case for failure to prosecute.

In any event, as discussed below, entirely aside from the lack of diversity jurisdiction Tufano's claims fail on their merits. Tufano appears to advance claims under Pennsylvania's criminal deceptive practices and conspiracy statutes, 18 Pa. C.S. §§ 903, 4107. These claims are fatally flawed on multiple scores. First, to the extent that Tufano invites us to institute a criminal prosecution under these state laws, it is clear that decisions regarding the filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors, and under the separation of powers doctrine are not subject to judicial fiat. Indeed, it has long been recognized that the exercise of prosecutorial discretion is a matter, "particularly ill-suited to judicial review." Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Recognizing this fact, courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties, finding that civil plaintiffs lack standing to make such claims and concluding that such relief simply is unavailable in a civil lawsuit. See, e.g., Ostrowski v. Mehltretter, 20 Fed. Appx. 87, 90 (2d Cir.2001) (stating that "Ostrowski has no standing to sue for any of Mehltretter's actions. First of all, he has not shown, injury-in-fact. The failure of Mehltretter to investigate or prosecute Bybel did not injure him in any direct manner- he has no 'personal stake in the outcome' of a perjury case brought against (or not brought against) another person ."); see also Kim v. Romero, 877 F.2d 64, 1989 WL

9

67116 at *1 (9th Cir. June 14, 1989) (affirming the dismissal of a suit against various prosecuting authorities for their failure to bring charges against a sheriff for alleged battery); McMinn v. Damiani, 765 F.2d 145, 1985 WL 13323 (6th Cir. May 3, 1985) (affirming the dismissal for lack of standing a pro se civil rights case where plaintiff had sued state prosecuting authorities for failing to investigate or prosecute claims against various state judges and lawyers); Gessner v. Dep't of Corr., 3:14-CV-111, 2014 WL 972290 (M.D. Pa. Mar. 12, 2014); Snyder v. Aaron, CIV.A. 05–1602, 2006 WL 544466 (W.D. Pa. Mar. 6, 2006); Moyer v. Borough of North Wales, Civ. No. 00–1092, 2000 WL 1665132 at *2 (E.D. Pa. Nov. 7, 2000) (stating that "Moyer has no judicially cognizable interest in Timothy Conley's criminal prosecution. Accordingly, an agreement to refrain from prosecuting Conley for sexual assault or to charge him with disorderly conduct or the act thereof violates no constitutional right that Moyer has standing to assert."); see also Wise v. Augustine, Civ. No. 97–2651, 1997 WL 534695 at *2 (E.D. Pa. Aug. 8, 1997) (stating that "[a] private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime."); Dundore v. O'Donnell, Civ. No. 85–2907, 1985 WL 2681 at *2 (E.D. Pa. Sept.17, 1985) (stating that "Defendant O'Donnell is alleged to have refused to file the criminal charges brought by plaintiffs. Although plaintiffs were no doubt aggrieved when O'Donnell refused to file the charges, they have no constitutional right that I am aware of to have criminal charges

10

filed."); Corbin v. Stevens, Civ. No. 91–1054, 1992 WL 96684 at *2 (S.D.N.Y. April 30, 1992) (stating that "[p]laintiff possesses no constitutional right to have someone arrested...."). Therefore, this invitation to use a civil lawsuit to institute a criminal case fails as a matter of law and should be dismissed.

Further, construing these averments as alleging some amorphous form of civil conspiracy in violation of state criminal law, we note that:

> Under Pennsylvania law there are three essential elements to a civil conspiracy claim. To plead and prove such a claim a plaintiff must allege that: (1) two or more persons acted with a common purpose to commit an illegal act or to commit a lawful act by unlawful means or for an unlawful purpose, (2) overt action in furtherance of the common purpose has been taken and (3) actual legal damage has resulted. Weaver v. Franklin County, 918 A.2d 194,202 (2007) (citing Brown v. Blaine, 833 A.2d 1166 (2003)). Moreover:

>> [I]n order to plead a civil ... action based upon a claim of conspiracy, a plaintiff must plead allegations that are: supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

> Flanagan v. Shively, 783 F.Supp. 922, 928 (M.D. Pa. 1992). Furthermore, when pleading a conspiracy claim, a plaintiff cannot rely upon subjective suspicion and speculation. Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991). Quite the contrary, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred. D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); see also

Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (stating that a conspiracy requires a 'meeting of the minds') (further citation omitted). This holding remains good law following Twombly and Iqbal, which, in the conspiracy context, require 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.' Twombly, 550 U.S. at 556, 127 S.Ct. 1955, 167 L.Ed.2d 929." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) cert. denied, — U.S. —, 131 S.Ct. 1798, 179 L.Ed.2d 655 (U.S. 2011).

Angino v. BB&T Bank, No. 1:15-CV-2105, 2016 WL 4408835, at *12 (M.D. Pa. June 7, 2016), report and recommendation adopted sub nom. Angino v. BB&T, No. 1:15-CV-2105, 2016 WL 4366962 (M.D. Pa. Aug. 16, 2016).

Tufano's odd, speculative, vague, and amorphous conspiracy claims plainly do not meet this level of pleading demanded by law. Therefore, these curious but implausible pleadings, which are bereft of well-pleaded facts, fail to state a claim upon which relief may be granted.

Nor can Tufano rely upon Pennsylvania's charities statute, 10 Pa. Stat. Ann. § 162.15, to sustain a private cause of action against these defendants as he attempts to do in this case. Rather, enforcement of these charitable statutes is a task exclusively consigned to the state and to local district attorneys, who may bring administrative, civil, or criminal actions. 10 Pa. Stat. Ann. §§ 162.16-19.

Simply put, all of the Poulis factors currently appear to favor dismissal of this complaint since Tufano has declined to litigate this case, or comply with court orders, we appear to lack jurisdiction over these state law claims, and his claims fail on their

12

merits.

## III.  <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that this case

be DISMISSED with prejudice for failure to prosecute.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of August 2024.

<u>S/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge